IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NADEEN ALSAADI,

    Plaintiff,

v.                                                            No. 2:23-cv-291 KG/KRS

SAULSBURY INDUSTRIES, INC.,

    Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO QUASH SUBPOENA (Doc. 140) and
DENYING DEFENDANT'S FIFTH MOTION TO COMPEL (Doc. 142)**

THIS MATTER is before the Court on Plaintiff's Motion to Quash Subpoena for her GPS Data and for Protective Order, (Doc. 140), filed March 4, 2024. Defendant filed a response to the Motion to Quash on March 18, 2024, and Plaintiff filed a reply on April 1, 2024. (Docs. 151, 164). Also before the Court is Defendant's Fifth Motion to Compel, (Doc. 142), filed March 12, 2024, which seeks the same GPS data from Plaintiff. Plaintiff filed a response to the Motion to Compel on March 26, 2024, and Defendant filed a reply on April 9, 2024. (Docs. 157, 173). Having considered the parties' briefing, the record of the case, and relevant law, the Court grants Plaintiff's Motion to Quash Subpoena, (Doc. 140), and denies Defendant's Fifth Motion to Compel, (Doc. 142).

    **I.**     **Background**

Plaintiff brings claims against Defendant for: (1) sex and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) sex and national origin discrimination in violation of the New Mexico Human Rights Act ("NMHRA"); (3) race, ancestral, and ethnic

discrimination in violation of 42 U.S.C. § 1981; (4) retaliatory discharge; (5) breach of implied contract; and (6) negligence.  (Doc. 29) (Second Amended Complaint).  Plaintiff alleges that during the time she worked for Defendant – from April 2022 to June 2022 – Defendant's employee, Anthony Hammons, discriminated against her and Defendant was negligent in its hiring, supervising, and retaining of Mr. Hammons.  *Id.* at 1.

In her Motion to Quash, Plaintiff asks the Court to quash a subpoena Defendant issued to Verizon for cell-site location information ("CLSI") and GPS data located in Plaintiff's phone records from May 1, 2022 through June 30, 2022.  (Doc. 140); (Doc. 140-1).  Plaintiff argues she has not waived her right to privacy in the GPS data in her cell phone, iPad or car by bringing employment-related claims.  (Doc. 140) at 3-4.  Plaintiff states the request is not limited to any aspect of Plaintiff's employment, damages, or other relevant facts in this case, and there is no material issue as to Plaintiff's location during the requested time period.  *Id.* at 4-5.  Plaintiff further argues the requested data is equally available to Defendant from Plaintiff's and Mr. Hammons' work-issued cell phones.  *Id.* at 5.

Defendant responds that the requested data is relevant to "show Plaintiff willingly visited Anthony Hammons' apartment, off-the-clock, for reasons unrelated to her employment" and "[t]his is evidence from which the trier of fact could reasonably conclude that Mr. Hammons did not sexually harass her [or] cause Plaintiff's alleged injuries."  (Doc. 151) at 2.  Defendant argues that "Plaintiff and Mr. Hammons were in a consensual relationship," that "Mr. Hammons testified as much and stated that Plaintiff spent time at his apartment in Carlsbad, New Mexico— even spending the night on several occasions."  *Id.* at 4 (citing Doc. 151-4, Mr. Hammons' deposition).  Defendant states that Plaintiff denies spending the night at Mr. Hammons' apartment, so the location data relates to "Plaintiff's assertion that Mr. Hammons subjected her

2

to unwelcome conduct and is reasonably calculated to obtain evidence specific to Plaintiff's sexual harassment claim." *Id.* "Simply put, if Plaintiff's GPS data places her at Mr. Hammons' apartment, after work, the truth of Mr. Hammons' testimony becomes more likely." *Id.* Defendant further states that Plaintiff's Saulsbury-owned phone was wiped clean at the time it was returned by Plaintiff . *Id.*

In reply, Plaintiff argues that the "primary issue in this case is whether Mr. Hammons' conduct was unwelcome and whether he made Plaintiff's job contingent on his sexual advances, not whether Plaintiff was located at or 'willingly visited' Mr. Hammons' apartment." (Doc. 164) at 1-2. Plaintiff notes that Mr. Hammons testified that Plaintiff was at his apartment on only two occasions, while he was at Plaintiff's apartment "fifteen or so" times, and Plaintiff argues that Defendant has Mr. Hammons' and Plaintiff's phone records, as well as GPS data from Mr. Hammons' work-issued truck, to buttress these claims. *Id.* at 3-4. Plaintiff asserts that allowing Defendant to obtain two months of Plaintiff's GPS data to ascertain whether she was at Mr. Hammons' apartment on only two occasions is not proportional to the needs of this case. *Id.* at 4.

In its Fifth Motion to Compel, Defendant asks the Court to compel Plaintiff to respond to RFP No. 25, which asks for GPS data from Plaintiff's car, personal cell phone, iPad, and any other electronic device during the time she was employed by Defendant. (Doc. 142); (Doc. 142-2). Defendant relies on the same reasons stated in response to Plaintiff's Motion to Quash—that the data is relevant to show that Plaintiff willingly visited Mr. Hammons' apartment, which could show that Mr. Hammons did not sexually harass her. *Id.* In response to the Motion to Compel, Plaintiff incorporates the arguments made in her Motion to Quash—that RFP No. 25 is not limited to information that is relevant to the parties' claims or defenses and that Plaintiff's

3

location at Mr. Hammons' home does not indicate her willingness to be there or whether his conduct was welcome. (Doc. 157). In reply, Defendant states again that it seeks Plaintiff's GPS data to refute her testimony that she did not spend any time at Mr. Hammons' apartment and to establish that they had a consensual relationship. (Doc. 173).

## II.     Legal Standard

Federal Rule of Civil Procedure 26 permits parties "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In considering whether to permit discovery, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. While "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865-66 (D. N.M. 2015) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). In addition, Rule 26(c)(1) provides that courts may limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Rule 45 governs subpoenas issued to nonparties. Fed. R. Civ. P. 45; *see also Simon v. Taylor*, 2014 WL 6633917, at *14 (D. N.M.) (unpublished) ("Discovery of non-parties must be conducted by subpoena pursuant to [Rule] 45."). A court may quash or modify a subpoena that

requests privileged or protected information or subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A).  While overbreadth and irrelevance are not contained within Rule 45's list of enumerated reasons for quashing a subpoena, it is generally accepted that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b).  *See Quarrie v. Wells*, 2020 WL 4934280, at *2 (D. N.M.) (unpublished) ("A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26."); Fed. R. Civ. P. 45(d)(1) advisory committee note (explaining the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").  Thus, the Court must examine whether a request contained in a subpoena is overbroad or seeks irrelevant information under the same standards as set forth in Rule 26(b).

### III. Analysis

The Court must first determine whether Plaintiff has standing to move to quash a subpoena that was served on a non-party.  *See Public Service Co. of Okla. v. A Plus Inc.*, 2011 WL 691204, at *2 (W.D. Okla.) (unpublished) ("[D]ecisions applying Rule 45(c)(3)(A) require a court to consider the movants' standing even if it is not disputed.") (citations omitted).  A party generally has no standing to object to subpoenas issued to a non-party, absent some personal right or privilege regarding the subject matter in the documents sought.  *See id.* ("[T]he general rule is that only the person to whom the subpoena is directed has standing to object to its issuance.").  Here, Plaintiff has a privacy interest in the subject matter of the subpoena because it asks for her location data and records of all incoming and outgoing calls for her personal cell phone.  *See, e.g., United States v. Morales-Ortiz,* 376 F. Supp. 2d 1131, 1139 (D.N.M. 2004) (finding that a search warrant was required to search cell phones because "[a]n individual has an expectation of privacy in an electronic repository for personal data, including cell telephones and

pager data memories."); *Herff Jones, Inc. v. Okla. Graduate Servs., Inc.*, 2007 WL 2344705, at *3 n.4 (W.D. Okla.) (unpublished) (finding defendants had standing to quash subpoenas seeking, among other things, their local, long distance, cellular, and other communications-related records). The Court finds that Plaintiff has standing to move to quash the subpoena.

Next, the Court considers the substance of the subpoena and RFP No. 25. The subpoena asks Verizon to produce all CSLI, cell tower information, location information, longitudinal and latitude information, GPS data, and records of incoming and outgoing telephone calls for Plaintiff's personal cell phone number from May 1, 2022 through June 30, 2022. (Doc. 140); (Doc. 140-1). Similarly, RFP No. 25 asks Plaintiff to produce all GPS data relating to her vehicle, personal cell phone, iPad, or any other electronic device for the time period she worked for Saulsbury. (Doc. 142-1) at 9.

While Defendant contends it seeks this information to show that Plaintiff visited Mr. Hammons' apartment, neither the subpoena nor RFP No. 25 are limited in any way to the location of Mr. Hammons' apartment or the dates Mr. Hammons alleges Plaintiff was there.[1] Defendant also asserts the requested information can be used to show the truthfulness of Mr. Hammons' testimony and that he did not sexually harass Plaintiff or cause her alleged injuries. (Doc. 151) at 4. Nevertheless, at most there are only two occasions the parties disagree whether Plaintiff was at Mr. Hammons' apartment. Notably, the subpoena issued by Defendant did not limit the demand for GPS data to a time period in close proximity to the two occasions where

---

[1] While Defendant argues in its response to the Motion to Quash that Mr. Hammons testified "Plaintiff spent time at his apartment in Carlsbad, New Mexico—even spending the night on several occasions," Mr. Hammons testified in his deposition that Plaintiff spent one night and part of another night there, and does not mention any other visits by Plaintiff to Mr. Hammons' apartment. *Compare* (Doc. 151) at 4 *with* (Doc. 151-1) at 9. The Court cautions Defendant's counsel to refrain from exaggerating or misstating deposition testimony.

Mr. Hammons testified that Plaintiff visited his apartment, or to the location of Mr. Hammons' apartment. Instead, the subpoena seeks all GPS data for the entire two month period of time Plaintiff was employed by Defendant. Had Defendant tailored its subpoena to correspond with the two occasions Mr. Hammons testified Plaintiff was at his apartment, and to the location of Mr. Hammons' apartment, the Court would be facing a different question. However, the Court is not persuaded that Plaintiff's appearance at Mr. Hammons' apartment on two occasions is sufficiently relevant to the parties' claims or defenses to allow Defendant to obtain such a vast amount of data from Plaintiff's personal electronic devices for a two-month time period. Nor will the Court narrow for Defendant the information sought in the subpoena by requiring production of the GPS data that might have been, but was not, properly sought. The cases Defendant relies on are distinguishable because in one case the *employer* was ordered to produce company call data when the plaintiff alleged her supervisor often called her, and the other case involves a plaintiff who alleged being unable to leave home due to a disputed injury. *See* (Doc. 151) at 2 (citing *Roberts v. Air Capitol Plating*, 1997 WL 446266, at *4 (D. Kan.) and *Jalowsky v. Provident Life & Accident Ins. Co.*, 2020 WL 4814286, at *3 (D. Ariz.)). These cases do not support an order requiring production of two months of location data and all incoming and outgoing calls for a personal cell phone. For these reasons, the Court finds the requested discovery is not proportional to the needs of this case. Accordingly, the Court grants Plaintiff's Motion to Quash and denies Defendant's Fifth Motion to Compel.

     Pursuant to Rule 37(a)(5)(A), if a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's

fees." Similarly, Rule 37(a)(5)(B) requires courts, after giving an opportunity to be heard, to order payment of attorney's fees if a motion to compel is denied, unless the motion was substantially justified or other circumstances make an award of expenses unjust. For an "opportunity to be heard," "[a]n actual hearing is not necessary ..., and the Court may consider the issue of expenses on written submissions." *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616. 622 (D. Kan. 2005). "The 'written submission' requirement is met where the moving party requests expenses in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response." *Id.*; *see also N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 2017 WL 4271330, at *2, n.1 (D.N.M.).

Since the Court granted Plaintiff's Motion to Quash and denied Defendant's Fifth Motion to Compel, the Court must consider awarding attorney's fees to Plaintiff under Rule 37(a)(5) after allowing Defendant an opportunity to be heard. Within thirty (30) days of entry of this Order, Plaintiff may file a motion seeking reasonable costs and attorney's fees incurred in bringing her Motion to Quash and in responding to Defendant's Fifth Motion to Compel. Failure to meet this deadline will forfeit any possible fee award. Defendant may respond to the motion and Plaintiff may file a reply in accordance with the briefing deadlines set forth in Local Rule 7.4.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Quash Subpoena for her GPS Data and for Protective Order, (Doc. 140), is GRANTED and the subpoena served by Defendant is hereby QUASHED.

IT IS FURTHER ORDERED that Defendant's Fifth Motion to Compel, (Doc. 142), is DENIED. Plaintiff may file a motion seeking reasonable costs and attorney's fees incurred in

bringing her Motion to Quash and in responding to Defendant's Fifth Motion to Compel within thirty (30) days of entry of this Order.

    IT IS SO ORDERED.

                                            _____
                                            KEVIN R. SWEAZEA
                                            UNITED STATES MAGISTRATE JUDGE